CITY OF HARTFORD *v.* THE LARRABEE FUND
ASSOCIATION ET AL.

HOUSE, THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued April 8—decided June 21, 1971

*William K. Cole,* with whom was *Raymond S. Andrews, Jr.,* for the appellant (named defendant).

*Bourke G. Spellacy,* with whom was *Stuart N. Updike,* for the appellee (plaintiff).

*C. Michael Budlong,* assistant attorney general, with whom was *F. Michael Ahern,* assistant attorney general, for the appellee (defendant Robert K. Killian, attorney general).

*William C. Galligan* appeared for the town of West Hartford.

THIM, J. On May 4, 1863, Major Charles Larrabee died, leaving a will with three duly executed codicils.[1] Hereinafter we will refer to "the will" as encompassing the will and the three probated codicils. The will was admitted to probate in the Probate Court for the district of Hartford. The will bequeathed the major portion of Larrabee's estate to the city of Hartford, and a smaller amount to the town of West Hartford, both in trust, to create a fund for specified purposes, to be distributed in a specified manner. The fund was accepted by the city of Hartford, as trustee, in accordance with the terms of the will. Pursuant to the will, in December, 1864, an unincorporated association was formed, known as The Larrabee Fund Association. It adopted rules and regulations which required that it be comprised of "two ladies from each of the churches of Hartford." Thereafter, the city of Hartford made payments of income from the fund to the association until 1941. During the period from December, 1864, until 1941 other gifts and bequests were received by the association, and by 1941 the value of the fund was approximately $110,000. On May 7, 1941, after a public hearing, and pursuant to a request by the association, the General Assembly passed a special act incorporating The Larrabee Fund Association, hereinafter referred to as the corporation.[2] Since in-

---

[1] A fourth codicil was improperly executed, not admitted to probate, and thus of no consequence here.

[2] "[23 Spec. Acts 788 No. 161.] AN ACT INCORPORATING THE LARRABEE FUND ASSOCIATION. Section 1. Lois P. Williams, Helen L. Newell, Helen W. Bush, Helen G. Waterman, Sara B. C. Ballard, Rose A. Critchfield and Jane B. Watson, with such other persons as may be associated with them, and their successors, are created a body politic and corporate by the name of The Larrabee Fund Association and under that name shall have all the powers described in section

corporation the corporation has continued to receive and distribute the income from the Larrabee Fund.

3382 of the general statutes [Rev. 1930], except subsection nine thereof, and shall also have the power to acquire, accept or receive property otherwise than by purchase.

"Sec. 2. The purpose of the corporation shall be to aid and benefit disabled, sick and needy females and other sick and poor persons of the city of Hartford, and towns adjoining Hartford, and generally to carry out purposes set forth in the will of Major Charles Larrabee, probated in 1863 in the probate court for the district of Hartford.

"Sec. 3. The care, control and disposition of the property and funds of said corporation and the general management of its affairs shall be vested in a board of trustees. Said corporation shall have power to adopt by-laws for the government of its affairs, which by-laws shall prescribe the number of trustees, their terms of office, and the manner of their appointment, and shall prescribe the requirements for membership in the corporation.

"Sec. 4. Said corporation and its properties shall be forever devoted to charitable purposes. No officer, trustee, member or employee thereof shall receive any pecuniary profit from its operation, except reasonable compensation for services in effecting one or more of its purposes. In the event of its dissolution, its property shall become vested in the Larrabee Fund, a charitable trust administered by the city of Hartford, and shall continue to be used for the purposes enumerated in said will of Major Charles Larrabee.

"Sec. 5. Whereas, under the will of said Major Charles Larrabee, a fund, known as the Larrabee fund, was bequeathed to the city of Hartford with the provision that the city should invest the fund and a committee of ladies hitherto a voluntary association known as 'The Larrabee Fund Association,' should administer the income of the fund for the benefit of disabled, sick and needy persons of the city of Hartford, the corporation herein formed shall succeed to all the rights and privileges of said voluntary association; and all property which said voluntary association has received by gift or otherwise is transferred to the corporation, pursuant to a unanimous vote passed at the annual meeting of said association on November 18, 1940.

"Sec. 6. The city of Hartford, as trustee of the Larrabee fund created under the will of said Major Charles Larrabee, is authorized and directed to pay over to said corporation the annual income from said Larrabee fund in the same manner as it has hitherto paid over said income to the voluntary association bearing the same name. The income thus received from the city of Hartford shall be administered by a committee of ladies appointed by the trustees of said corporation, which committee shall be composed of members of the corporation who are identified with Hartford churches."

This action was brought by the city of Hartford pursuant to General Statutes § 52-251 in order to determine whether or not it should continue to pay the income from the Larrabee Fund to the corporation. The attorney general has been made a party, as required by General Statutes § 3-125, in order to protect the public interest in the charitable fund. The original action requested answers to twelve questions. By stipulation, however, a single issue, that of the constitutionality of Special Acts 1941, No. 161, was severed and determined. The court found the special act to be unconstitutional on two grounds: (1) as an impairment of the obligation of contracts contrary to the provisions of article I, § 10 of the constitution of the United States; and (2) as a violation of the principle of separation of powers as found in article second of the constitution of Connecticut. The trial court's determination was solely in reference to the Larrabee Fund. From the judgment as entered the defendant corporation has appealed, assigning many errors, attacking: certain findings made by the court; the refusal of the court to make certain findings and drawing certain conclusions; the overruling of the defendant corporation's claims of law; the rendering of a judgment finding the act to be unconstitutional; and the method of construction allegedly employed by the court.

The sole issue on this appeal is the constitutionality of Special Acts 1941, No. 161. The plaintiff claimed, and the trial court found, that it is void on its face, for the two reasons already noted. We have concluded that the special act is void for the second reason reached by the trial court: that it violates the constitution of Connecticut, article second, the separation of powers.

In order to comprehend the issue, it is necessary

to understand the nature of the organization here involved. Under the will of Major Larrabee, a trust fund was created for specified purposes. That fund was not given to an already-existing charitable body, either for administration or as a beneficiary. Rather, it was given to the city of Hartford as trustee, and a specific organization was described, and designated as the distributor of those funds. That organization did not exist. It was to be created as specified in the will. Thus, not only the purposes of the trust, but also the method of distribution, and the composition of the distributing body, are testamentary in nature. See *Dwyer* v. *Leonard,* 100 Conn. 513, 519, 124 A. 28.

As determined by the trial court, the distributing body, a society of ladies, was clearly *not* the beneficiary of the trust. That body could not retain the funds. It could only designate who was to receive those funds and distribute them. Likewise, it was not a trustee, for the trustee was specifically designated. Thus, the only power held by the society of ladies was to select beneficiaries from specified classes: lame, deformed or maimed females of Hartford first, and then, if excess funds were available, needy sick females and other sick and poor persons last. Thus, the power bestowed upon the society was a limited power of selection. Such a power, divorced from the trustee, is permitted. See *Westport Bank & Trust Co.* v. *Fable,* 126 Conn. 665, 667, 13 A.2d 862; *Shannon* v. *Eno,* 120 Conn. 77, 84, 179 A. 479; *Goodrich's Appeal,* 57 Conn. 275, 284, 18 A. 49.

The structure created by the will was thus a fund with the city of Hartford as trustee, and with the power to select beneficiaries in the society of ladies. The organization which controlled the Larrabee Fund was a corporation: the city of Hartford. The

power of selection was with a voluntary association which was formed pursuant to the terms of the will: The Larrabee Fund Association. Thus, situations where testamentary bequests are granted to charitable corporations which previously existed but, at the time of the probate of the will, have changed in form, do not apply. There, the legislative act of incorporation affects only the organization, and not the terms of the will. If the purpose of the new organization conforms substantially to that of the old, or if it is found that the new organization was known to the testator, the courts will allow the bequest to pass to the new organization. See *Bridgeport-City Trust Co.* v. *Bridgeport Hospital,* 120 Conn. 27, 34, 179 A. 92; *Bridgeport Trust Co.* v. *Marsh,* 87 Conn. 384, 87 A. 865. Here, however, as noted, the organization was created pursuant to the directions in the will. Its structure conformed to the interpretation of the provisions of the will. By incorporating the association, and revising its structure, therefore, the legislature has reinterpreted Major Larrabee's will.

Since our holding in *Bridgeport Public Library & Reading Room* v. *Burroughs Home,* 85 Conn. 309, 82 A. 582, it has been clear that jurisdiction over the administration of charitable trusts rests exclusively in the judicial department. Id., 320. This principle has since been reaffirmed. See *Adams* v. *Rubinow,* 157 Conn. 150, 154, 251 A.2d 49; *Heiberger* v. *Clark,* 148 Conn. 177, 185, 189, 169 A.2d 652; *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 231, 140 A.2d 863; *Second Ecclesiastical Society* v. *Attorney General,* 133 Conn. 89, 93, 48 A.2d 266. Unquestionably, the Larrabee Fund is a charitable trust. None of the parties has suggested to the contrary. The Larrabee will contains no

express authority to incorporate the society. Of course, it also contains no express prohibition to do so. The defendant corporation argues that since the will expresses a desire for permanence, and since the corporate structure provides for permanence, the will permits incorporation. While that argument is appealing, it fails to salvage the special act for two reasons. First, the logic of the argument, while reasonable, is not exclusive. The Larrabee Fund, with its voluntary association, as originally conceived, demonstrated a considerable permanence. It existed effectively for almost eighty years. Further, the fund itself was held by the city of Hartford, a body which was already a corporation, and thus permanent in nature. Although in this particular case the trustee could not distribute the fund, it nonetheless was charged with the duty of administering the fund. The final result is that the desire for permanence does not automatically provide the authority to incorporate the society, and thus leave the legislature free to act on a request to do so. And second, by merely viewing the corporation's argument, it is obvious that to discover authority to incorporate, the will must be interpreted. Without a doubt only a court may interpret a will.

It is apparent that the legislature had no power to vary the structure of the association as described in Major Larrabee's will. This is so no matter how beneficial the corporate form might be, and no matter how well-meaning the parties to the change might have been. Only the court had the power to determine if the will permitted the corporate structure, or if changed circumstances required a more efficient structure. This would be so even if the sole change were the act of incorporation. It is thus clear that in incorporating The Larrabee Fund

Association the legislature trespassed on judicial domain. Further, the special act purported to direct that the corporation be the successor to the association. This, too, is a judicial function, and thus beyond the scope of the legislature's power. *Macy* v. *Cunningham,* 140 Conn. 124, 132, 98 A.2d 800. For both of the preceding reasons, Special Acts 1941, No. 161 is in violation of article second of the constitution of Connecticut and is thus void.

While we always attempt to construe statutes so as to find them constitutional, where one branch of the government acts on a matter reserved to another branch of the government we have no choice. We can conceive of no construction of this act which would change the fact that a charitable trust has been modified by the legislature. The test of *Adams* v. *Rubinow,* supra, has been met. It is also true that charitable trusts are construed as liberally as possible in order to carry out the intent of the donor. *Bridgeport-City Trust Co.* v. *Bridgeport Hospital,* supra. That, however, is not the problem here. Our decision does not affect the trust fund. Its only effect is on the structure of the association. Our sole purpose is to determine if Special Acts 1941, No. 161 is unconstitutional "on its face." We have determined that it is, and we have no need to construe the Larrabee will itself. It is certain, however, that the fund will not fail as a result of our construction. That is a problem related to cases where a bequest is to an organization which has been restructured. As we have noted, that is not this case.

It appears that The Larrabee Fund Association has been the recipient of a number of gifts and bequests over the years. This appeal, however, relates only to the Larrabee Fund itself. We have no information about these gifts or bequests, and

neither their trustees nor their beneficiaries, if any, are parties to this action. We thus specifically do not determine the effect of our holding on such gifts and bequests.

Having reached the above result, it is not necessary for us to consider the defendant corporation's further claims and assignments of error. We also find it unnecessary to consider the federal constitutional question. The special act is unconstitutional on its face and is thus void as to the Larrabee Fund.

There is no error.

In this opinion RYAN and SHAPIRO, Js., concurred.

HOUSE, C. J. (dissenting). The sole issue submitted by stipulation for determination by the trial court was: "Is Special Act No. 161 of the January 1941 Session of the General Assembly unconstitutional on its face?" On this narrow issue the judgment of the trial court was: "[T]he answer to the question propounded in the stipulation is, 'Special Act No. 161 of the Special Acts of 1941 is unconstitutional on its face in so far as it applies to The Larrabee Fund established by the Will and Codicils of Major Charles Larrabee.'" The majority opinion finds that there was no error in the judgment as rendered and, because of the reasons for which it reached that conclusion, I am unable to concur in the opinion.

The question submitted by the parties did not call for a general adjudication as to whether or not the special act conflicts with any specific provisions of Major Larrabee's will but only whether the act read alone could under any circumstances be constitutionally valid. The specific question was limited to whether the act was unconstitutional "on its face." The face of an instrument is "that which is shown

by the mere language employed without any explanation, modification, or addition from extrinsic facts or evidence." Black, Law Dictionary (4th Ed.). "Face" is "[t]he matter which appears on document, pleading, statute, writ or other written or printed instrument, without explanation or addition." Ballentine, Law Dictionary (3d Ed.). The United States Supreme Court has repeatedly construed the phrase "unconstitutional on its face" to apply to situations where the court will not look beyond the legislative enactment itself to see how it has been applied to a specific case. See *Talley* v. *California,* 362 U.S. 60, 80 S. Ct. 536, 4 L. Ed. 2d 559; *Thornhill* v. *Alabama,* 310 U.S. 88, 96, 60 S. Ct. 736, 84 L. Ed. 1093; *Lovell* v. *City of Griffin,* 303 U.S. 444, 58 S. Ct. 666, 82 L. Ed. 949.

Were it not for the ratio decidendi of the majority opinion, the foregoing discussion could be summarily dismissed as a quibble over technical niceties in pleading, but in the light of the reasoning of the majority opinion, it is a matter of some significance. This case involves a constitutional question and a proper respect for the constitutional separation of powers as well as sound policy dictates that coordinate branches of government avoid constitutional clashes with each other if at all possible. "In part, this principle is based upon the realization that, by the very nature of the judicial process, courts can most wisely determine issues precisely defined by the confining circumstances of particular situations. . . . In part it represents a conception of the role of the judiciary in a government premised upon a separation of powers, a role which precludes interference by courts with legislative and executive functions which have not yet proceeded so far as to affect individual interests adversely." *Communist*

*Party* v. *Subversive Activities Control Board,* 367 U.S. 1, 72, 81 S. Ct. 1357, 6 L. Ed. 2d 625; see *Adams* v. *Rubinow,* 157 Conn. 150, 152, 251 A.2d 49.

The primary holding of the majority opinion is that the legislature is constitutionally powerless without permission from a court to charter an organization designed to carry out the terms of a charitable trust. The opinion states that "it is obvious that to discover authority to incorporate, the will must be interpreted. Without a doubt only a court may interpret a will"; "by incorporating the association, and revising its structure, the legislature has reinterpreted Major Larrabee's will"; and "[i]t is thus clear that in incorporating The Larrabee Fund Association the legislature trespassed upon judicial domain."

Contrary to this holding of the majority opinion, I see no constitutional impediment whatsoever to the creation by the legislature without prior judicial approval of a corporation designed, created and empowered to carry out the provisions of a charitable trust. See *Nelson* v. *Cushing,* 56 Mass. (2 Cush.) 519, 526–27. Although practicalities are not controlling, as a practical matter, and in view of the inherent difference between legislative and judicial operations, it would also seem a more sensible procedure for the legislature to act first with its legislative enactment subject to later judicial review in a proper proceeding than for the court first to approve proposed legislation which the legislature may subsequently not see fit to enact.

I have no quarrel with the portion of the majority opinion, supported by good authority, holding that jurisdiction over the administration of charitable trusts rests exclusively in the judicial department, that the legislature is constitutionally without power

to vary the terms and provisions of a charitable trust, and that a legislative enactment purporting to do so cannot be sustained. My dissent is directed to the holding that, because a legislative act designed to carry out the terms of a charitable trust necessarily requires a preliminary legislative interpretation of the terms of the trust which the act seeks to implement, the act must be held unconstitutional.

The trial court saw fit to go behind the "face" of the special act in question. As already noted, the majority opinion did also and, as a result, further concluded that the constitutionality of the act could not be sustained for the additional reason that it authorized and directed a deviation from the provisions of the trust. Although in my opinion the determination of this latter question was not presented for decision in this case, I do not disagree with the soundness of the conclusion thus reached. My disagreement is with the holding that the legislature is constitutionally without power to create a corporation designed to implement the provisions of a trust instrument without a prior judicial interpretation of the provisions of the trust and judicial adjudication that the proposed act of incorporation does not contravene any of the provisions of the trust. With that holding I do not agree and, accordingly, I would hold that the answer to the stipulated question should be: "No, Special Act No. 161 of the January 1941 Session of the General Assembly is not unconstitutional on its face."

In this opinion LOISELLE, J., concurred.