[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Myrtle Mills Associates has filed a third revised complaint ("complaint") alleging in ten counts that Bethel Roofing, Inc. (hereinafter "defendant") and the defendant, American Roofing Corporation (hereinafter "ARC"), were liable to it for damages allegedly sustained because of the faulty installation of a roof. The complaint recites that the parties entered into a contract in which the defendant agreed to repair the roof on a building owned by the plaintiff. The work performed pursuant to the contract was faulty and the roof began to leak very shortly after completion.
On or about July 3, 1987, the defendant submitted a written proposal to replace the entire roof, with the exception of the portion the defendant replaced in 1985. The defendant expressly CT Page 9002 warranted that the newly installed roof, which was manufactured by ARC, would solve the water leak problem and would be fully guaranteed by ARC. However, during the winter of 1987-88, within three (3) years of the original work and within several months of the corrective action, the plaintiff again experienced water leaks, and the roof has continued to leak whenever there is precipitation.
The second count of the complaint alleges a violation of General Statutes, Sec. 42a-2-313 (Article 2 of the Uniform Commercial Code) (U.C.C.) in that the defendant, by representing to the plaintiff that replacing the roof as proposed would halt the water leaks, breached an express warranty causing damages. The third count sets forth a violation of General Statutes, Sec. 42a-2-314, in that the materials installed by the defendant were defective and that the defendant breached its implied warranty of merchantability which it owed to the plaintiff. The fourth count claims a violation of General Statutes, Sec. 42a-2-315, in that the defendant, by possessing the requisite knowledge and making representations inducing the plaintiff to rely on it, created and breached an implied warranty of fitness because the roof continues to leak.
The defendant has filed a motion to strike the second, third and fourth counts of the third revised complaint on the grounds that those counts allege a contract for services and not a sale of goods. Therefore, it argues that those counts fall outside the purview of Article 2 of the U.C.C. and must be stricken. The defendant filed a formal objection to the plaintiff's opposition memorandum relying on Sec. 155 of the Practice Book, i.e., that the plaintiff's memorandum was untimely filed.
The purpose of the motion to strike is to challenge the legal sufficiency of the allegation of any complaint. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185
(1988). In judging the motion, it does not matter whether the party can prove the allegations at trial. Levine v. Bess and Paul Sigel Hebrew Academy of Greater Hartford, Inc., 39 Conn. Sup. 129,131, 471 A.2d 679 (1983). The motion admits all facts well pleaded, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. The sole inquiry is whether the plaintiff's allegations, if proved, state a cause of action. Mingachos v. CBS, Inc., 196 Conn. 91, 108. The defendant's objection to the plaintiff's untimely filing of the opposition memorandum is dispositive of the motion before the court. Therefore, the defendant's motion to strike should be granted. CT Page 9003 However, despite that determination, the court chooses to address the merits of the motion.
In Incomm, Inc. v. Thermo-Spa, Inc., 41 Conn. Sup. 566, 570, the plaintiff, an advertising agency, sued the defendant, Thermo-Spa, Inc., a manufacturer of spa products, for breaching a contract to produce a brochure. The issue before the court in Incomm was whether the contract at issue was one for goods governed by the U.C.C. or one for services. To resolve the issue, the court stated that the defendant was plainly purchasing both services and materials and "[i]n such hybrid transactions, the question becomes whether the dominant factor or `essence' of the transaction is the sale of the materials or the services." G-W-L, Inc. v. Robichaux, 643 S.W.2d 392, 394 (Tex. 1982). After examining, inter alia, the purchase order, the court in Incomm utilized the same standard and concluded that the essence of what was being purchased was work, labor and services rather than materials and that the common law of contract as opposed to the U.C.C. would govern the dispute. See Cacace v. Morcaldi, 37 Conn. Sup. 735
(suit arising out of a claimed defective construction of a chimney is essentially one for breach of contract for services); Gulash v. Stylarama, Inc., 33 Conn. Sup. 108 (in a suit arising out of a claimed defective installation of a swimming pool, the contract is basically one of services, the materials are only incidental to the main purpose of the agreement).
In the present case, the defendant, in its memorandum of law in support of its motion to strike, argues that the instant contract is primarily one for services and is therefore not governed by the U.C.C. Conversely, the plaintiff argues that the defendant's motion to strike should be denied because the issue of whether the contract was one for goods or on for services cannot be determined based on the pleadings alone, and that the parties' intent in determining the predominant focus of the contract is controlling.
It is important to note that the "[p]roposal" submitted and agreed to by the plaintiff describes the transaction as "[r]epairs to roof." The proposal specifies such services as:
"[r]emove . . . roofing," "[i]nstall . . . insulation," "[a]pply . . . mat" "[r]eflash . . . drains." While true that goods are broadly defined as "all things, including specially manufactured goods, which are movable at the time of identification to the contract;" General Statutes, Sec. 42a-2-105(1); this definition CT Page 9004 does not include what the plaintiff intended to purchase here. The plaintiff wished to have a roof installed. A careful review of the proposal which the plaintiff agreed to in writing reflects that the contract was one predominately for the purchase of services, the materials being incidental to the main purpose of the agreement.
In addition, citing a great deal of cases from throughout the country, Connecticut courts have held that "[b]uilding and construction transactions which include materials to be incorporated into the structure are not agreements of sale." Epstein v. Giannattasio,25 Conn. Sup. 109, 113. (Citations omitted.) The plaintiff does cite one case, Marshall Graphics, Inc. v. Nancy Stamler d/b/a Stamler Associates, 13 CLT 39 (October 5, 1987) for the proposition that whether an agreement constitutes a contract for services or goods is to be found in the intention of the parties. However, Marshall Graphics, Inc. was decided on an entirely different factual context, namely, the design and sale of commercial art where beauty is in the eye of the beholder. Here, the contract itself was for the installation of a roof and, as such, was a contract for work, labor, and services, and not a sale of goods. The U.C.C. is inapplicable in the present action, and the defendant's motion to strike the second, third and fourth counts contained in the plaintiff's third revised complaint should be and is hereby granted on the merits as well as under Sec. 155 of the Practice Book.
Moraghan, Judge.